**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **RICHARD B. BAYSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF LINCOLN, et al.,**<br><br>**Defendants.** | **Case No. 4:26-cv-03344**<br><br>**DEFENDANTS CITY OF LINCOLN AND SGT. ALEX STOVER'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

Defendants City of Lincoln ("City") and Lincoln Police Sergeant Alex Stover ("Sgt. Stover") (collectively, "City Defendants") submit this brief in support of their Motion to Dismiss Plaintiff's Amended Complaint. City moves to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(4), (5), and (6) and Sgt. Stover moves the Court to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I. NATURE OF THE CASE AND FACTS.

On October 13, 2026, Plaintiff filed a Complaint suing City Defendants under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment Rights under the U.S. Constitution. (Filing No. 1 at 3). On October 16 and 17, 2026, Plaintiff filed a "Motion to Supplement the Record with Chronology of Surveillance Incidents and Notice of Video Records," and a "Motion to Supplement the Record with Internal Affairs Complaint Meeting and Notice of Retaliatory Enforcement Action." (Filing Nos. 5 and 7). The Court issued Text Orders stating it would construe Filing Nos. 5 and 7 as a Supplements to Plaintiff's original Complaint. (Filing Nos. 6 and 9).

On November 12, 2026, Plaintiff filed a Motion for Leave to File Amended Complaint. (Filing No. 16). On November 13, 2026, the Court granted Plaintiff's Motion. (Filing No. 18).

On November 16, 2026, Plaintiff filed his Amended Complaint suing City Defendants under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment Rights under the U.S. Constitution. (Filing No. 19 at 5-7).

Plaintiff alleges that Plaintiff began documenting "recurring law-enforcement encounters throughout Lincoln, Nebraska," beginning in June 2025. (Filing No. 19 at 3). However, Plaintiff provides few facts regarding the specific nature of these alleged "encounters," and relies on vague assertions that the "encounters" included law enforcement vehicles "traveling repeatedly near Plaintiff, behind Plaintiff, alongside Plaintiff, and at locations Plaintiff frequented." (Filing No. 19 at 3). Plaintiff alleges these "encounters" with law enforcement, including the Lincoln Police Department ("LPD") took place at a library, a park, public roadways, businesses, and near Plaintiff's residence. (Filing No. 19 at 3).

Interestingly, Plaintiff only alleges one instance in which LPD initiated contact with him. Plaintiff asserts that on March 17, 2026, he was stopped by officers with LPD and issued a warning for speeding. (Filing No. 19 at 4). Plaintiff does not allege he was arrested or even asked to step out of his vehicle. (Filing No. 19 at 4).

Also of note, Plaintiff alleges on October 4, 2026, an LPD vehicle with lights and sirens activated "suddenly entered from an unknown side street to Plaintiff's right," and caused Plaintiff to "brake abruptly and restricted Plaintiff's movement in response." (Filing No. 19 at 4). Plaintiff states the officer did not complete a "conventional" traffic stop or issue a citation or warning. (Filing No. 19 at 4).

In regard to Sgt. Stover, Plaintiff alleges he had a meeting with Sgt. Stover on December 30, 2025, and communicated with him in writing on March 22, 2026, to discuss his concerns with the "police activity [he] had been documenting." (Filing No. 19 at 3-4). Plaintiff alleges that

after he filed an Internal Affairs complaint there was an escalation in the number of law enforcement personnel and/or vehicles he was observing. (Filing No. 19 at 3-4).

As addressed below, Plaintiff has not provided proof of service to the Court. However, Plaintiff's initial Complaint (Filing No. 1) was served upon Assistant City Attorney, Renae Musekamp, who is not the City's Chief Executive Officer or the City Clerk. No attempts to properly serve the City with the Amended Complaint have been made. The Amended Complaint against City should be dismissed pursuant to Fed. R. Civ. P. 12(b)(4) and (5).

Furthermore, Plaintiff has failed to state a claim against both City Defendants upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Amended Complaint relies primarily on allegations that LPD officers were present in the same public areas as Plaintiff on various occasions without making contact. The Amended Complaint contains no factual allegations of wrongdoing by Sgt. Stover. Consequently, Plaintiff has failed to plead sufficient facts that any action by City Defendants violated his rights under the First, Fourth, and Fourteenth Amendments to U.S. Constitution.

## II. STANDARD OF REVIEW.

### a. Motion to Dismiss Standards.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009), *quoting Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 570 (2007). The pleading standard in Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. *Id., quoting Twombly*, 550 U.S. at 555. To satisfy the plausibility standard, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. Legal conclusions couched as factual allegations may be disregarded on a motion to dismiss. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft, 556 U.S. at 678, quoting Bell Atlantic Corp.*, 550 U.S. at 557.

**b. Municipal Liability Under § 42 U.S.C. 1983.**

In order to state a claim for § 1983 liability against a municipality, a plaintiff must show that a constitutional violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "An official policy is 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To allege a § 1983 claim against City that is based on an official policy, Plaintiff must identify "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978).

"A custom is 'a practice [that] is so widespread as to have the force of law." *Perryman v. City of Bloomington*, 704 F. Supp. 3d 961, 967 (D. Minn. 2023). For liability to attach pursuant to a "custom," a plaintiff must allege: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice of that misconduct; and (3) the plaintiff was injured by acts pursuant to the governmental entity's custom. *Troupe v. Young*, 143 F.4 955, 973 (8th Cir. 2025).

Finally, Plaintiff must allege that an official policy or custom not only caused the constitutional violation but was the moving force behind it. *Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

**c. Individual Liability Under § 1983.**

To state a claim against a law enforcement officer under 42 USC § 1983, a plaintiff must allege sufficient facts to show (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). For individual defendants, "[A] plaintiff must plead and allege facts demonstrating that each individual officer, through his own personal involvement in the alleged unconstitutional conduct, violated the plaintiff's civil rights." *Luong v. House*, 669 F. Supp. 3d 735, 746 (S.D. Iowa 2023). In order to hold an individual defendant personally liable for the deprivation of a constitutional right, it must be shown that the defendant engaged in "some affirmative act, participated in the affirmative act of another, or failed to perform an act which resulted in the deprivation of [the] plaintiff's federally protected rights." *Temple v. Dahm*, 905 F. Supp. 670, 672 (D. Neb. 1995). [E]ach Government official…is only liable for his or her own misconduct." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010), quoting *Ashcroft,* 556 U.S. at 677.

## III. ARGUMENT.

**a. Plaintiff has Failed to Properly Serve Defendant City of Lincoln.**

As of the writing of this brief, Plaintiff has not provided proof of service to the Court. (*See* Fed. R. Civ. P. 4(l)(1) stating proof of service must be by the server's affidavit," and Filing No. 11 in which Plaintiff alleges the Lancaster County Sheriff's Office confirmed that all but one

summons had been served. Plaintiff does state which defendants have been served or provide any server's affidavits.)

Fed. R. Civ. P. 4(j)(2) states that a State or Local Government must be served by:

(a) Delivering a copy of the summons and of the complaint and its chief executive officer;

(b) Serving a copy of each in the manner prescribed by the state's law for serving a summons on or like process on such a defendant.

Neb. Rev. Stat § 25-510.02(2) states that "any county, city, or village of this state may be served by personal, residence, certified mail, or designated delivery service upon the chief executive officer or clerk."

Of note, the initial Complaint (Filing No. 1) was served by the Lancaster County Sheriff on Assistant City Attorney, Renae Musekamp. Assistant City Attorney, Renae Musekamp is not the City's Chief Executive Officer nor is she part of the Lincoln City Clerk's Office. Plaintiff has made no attempts to properly serve the City with the Amended Complaint, nor has the City received proper service. Plaintiff has failed to serve City pursuant to Fed. R. Civ. P. 4(j)(2) and 12(b)(4) and (5).

**b. Plaintiff has Failed to Allege Violations of His First, Fourth, and Fourteenth Amendment Rights Under the U.S. Constitution.**

Plaintiff has failed to state a plausible claim against City Defendants for alleged violations of his rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. Regarding his **first claim**, Plaintiff asserts that all named defendants violated his First Amendment rights by retaliating against him for reporting potential law enforcement "misconduct" to Internal Affairs. (Filing No. 19 at 5). For a First Amendment retaliation claim

under § 1983 Plaintiff must allege three elements: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Wolk v. City of Brooklyn Center*, 107 F.4th 854, 859-60 (8th Cir. 2024).

Plaintiff spoke with Sgt. Stover on December 30, 2025. (Filing No. 19 at 3). Beyond a conclusory allegation that his "encounters" with law enforcement subsequently "continued and increased," Plaintiff pleads no facts showing any contact with LPD between December 30, 2025, and March 17, 2026. (Filing No. 19 at 3 and 5). A single warning for speeding, issued over two months later, fails to raise a plausible claim that City Defendants retaliated against his speech. (Filing No. 19 at 4). Nor has Plaintiff plausibly alleged that these circumstances would chill a person of ordinary firmness from exercising their First Amendment rights, particularly given that Plaintiff himself felt comfortable contacting Sgt. Stover with further concerns on March 22, 2026. (Filing No. 19 at 4).

In regard to **Claim 2**, Plaintiff alleges his rights were violated under the Equal Protection Clause of the Fourteenth Amendment as a result of "repeated law-enforcement attention directed toward Plaintiff over an extended period of time." (Filing No. 19 at 6). To establish a violation of the Equal Protection Clause, a plaintiff must show that he was treated differently than other people who were similarly situated and that there was not a rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In general, a police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involved discretion and therefore cannot be attacked in a class-of-one equal protection claim. *Flowers v. City of Minneapolis, Minn*, 558 F.3d 794, 799-800 (8th Cir. 2009).

Plaintiff's Amended Complaint is so vague that it is not possible to discern what specific conduct by LPD Plaintiff believes constitutes an Equal Protection violation. Aside from a single, brief interaction with LPD officers that resulted in a warning for speeding, Plaintiff describes nothing more than seeing officers pass him in public spaces while in performing their ordinary duties. (Filing No. 19 at 4 and 6). Plaintiff fails to allege how LPD officers carrying out their standard duties in public violates his rights under the Equal Protection Clause.

Regarding **Claims 3**, Plaintiff alleges that he was illegally seized twice in violation of the Fourth Amendment: (1) when his vehicle was stopped for speeding March 17, 2026, and (2) on October 4, 2026, when an officer traveling with lights and sirens near Plaintiff caused him to break, thereby restricting his movement. (Filing No. 19 at 4 and 7). Neither allegation states a plausible Fourth Amendment violation.

The Fourth Amendment prohibits only unreasonable searches and seizures. U.S. Const. Amend. IV. "Any traffic violation, however minor, provides probable cause for a traffic stop," therefore, this encounter does not constitute an unreasonable seizure. *U.S. v. Hollins*, 685 F.3d 703, 706 (2012). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission," to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. U.S.,* 575 U.S. 348, 354 (2015). Regarding the March 17, 2026, incident, Plaintiff alleges only that LPD officers stopped his vehicle for speeding and issued a warning. (Filing No. 19 at 4). Because Plaintiff does not allege that officers ordered him out of the vehicle, conducted a search, or prolonged the stop beyond the time necessary to issue the warning, Plaintiff fails to state a plausible Fourth Amendment claim.

Regarding the October 4, 2026, incident, Plaintiff's allegations that he had to brake for a passing LPD vehicle that was driving near him also fails to state a plausible claim under the

Fourth Amendment as there was no seizure. In order for "seizure" to have occurred, there must either be some application of physical force, or a show of authority to which the subject yields. *California v. Hodar*, 499 U.S. 621, 626 (1991). To establish a seizure, Plaintiff would have to allege that in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 100 S.Ct. 1870, 554 (1980). Plaintiff does not allege he was the direct subject of a traffic stop on October 4, 2026, and only alleges that his line of travel was briefly impeded when an officer with emergency equipment activated passed near him while presumably responding to another call. (Filing No. 19 at 4).

**c. The Amended Complaint Does Not Satisfy *Monell* for Liability Against City.**

In addition to failing to state any recognized constitutional violation generally, the Amended Complaint also does not meet the criteria for § 1983 municipal liability against City under *Monell*. Plaintiff has failed to plead factual content that plausibly demonstrates the existence of a policy or custom by City that is responsible for his alleged constitutional violations. *See Corwin*, 829 F.3d at 699.

The allegations in the Amended Complaint are insufficient to establish a municipal policy, as Plaintiff does not state facts indicating a City ordinance, regulation, or similar statement of policy caused his constitutional violations. *See Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (*quoting Monell*, 436 U.S. at 690–91).

Plaintiff has also alleged insufficient facts to show an unofficial custom by City is responsible for the constitutional harms alleged by Plaintiff. To show an unofficial custom, Plaintiff must start by alleging the existence of a continuing, widespread, and persistent pattern of alleged unconstitutional conduct. *Troupe*, 143 F.4 at 973. Here, the factual allegations fail to demonstrate that the City or its employees engaged in any conduct beyond standard law

enforcement patrol. Plaintiff alleges only that between June 2025 and October 2026, law enforcement, including LPD officers, were near or in his vicinity and only initiated contact with him once when he was given a warning for speeding. (Filing No. 19 at 3-7). Plaintiff's inference that City or its employees are somehow targeting Plaintiff simply merely by being present in the same public space is purely speculative and fails to satisfy the pleading standards of *Ashcroft*. (*See e.g.* Filing No. 19 at 3 in which Plaintiff states "encounters" with LPD occur at the library, parks and public roadways and Filing No. 19 at 5 in which Plaintiff alleges an LPD vehicle "moved directly in front of Plaintiff's vehicle as Plaintiff was preparing to leave," a McDonald's location.)

Next, Plaintiff has also failed to name any policymaker from the City, let alone plead facts that show a policymaker was indifferent to or authorized unconstitutional conduct by LPD officers. Lastly, Plaintiff fails to allege facts showing that any actions by City or its employees were the cause of any alleged constitutional violations.

**d. Plaintiff Fails to State a Plausible Claim Against Sgt. Stover.**

Plaintiff fails to state a plausible claim against Sgt. Stover in his individual capacity. Individuals can only be liable for their own alleged misconduct under § 1983. "[A] plaintiff must plead and allege facts demonstrating that each individual officer, through his own personal involvement in the alleged unconstitutional conduct, violated the plaintiff's civil rights." *Luong*, 669 F. Supp. at 746. Plaintiff alleges he spoke with Sgt. Stover on December 30, 2025, regarding his concerns that law enforcement vehicles were, at times, traveling near him. (Filing No. 19 at 3). It appears Plaintiff's only further interaction with Sgt. Stover was via writing on March 22, 2026. (Filing No. 19 at 4). Although Plaintiff makes conclusory allegations that "encounters" with law enforcement continued after he spoke with Sgt. Stover, Plaintiff fails to allege that Sgt. Stover directly participated in, ordered, or otherwise engaged in any retaliatory or

unconstitutional conduct. Because the Amended Complaint alleges no facts demonstrating Sgt. Stover personally participated in any wrongful conduct, Plaintiff fails to state a plausible claim against him in his individual capacity.

## IV. CONCLUSION.

Plaintiff has failed to effectuate proper service against City per Fed. R. Civ. P. (4)(j)(2) and City requests the Court enter an Order dismissing this action pursuant to Fed. R. Civ. P. 12(b)(4) and (5). Plaintiff has failed to state plausible § 1983 claims against both City Defendants pursuant to Fed. R. Civ. P. 12(b)(6). City Defendants respectfully request that the Court enter an Order dismissing this action pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety with prejudice.

DATED this 25th day of November, 2026.

CITY OF LINCOLN AND SGT. ALEX STOVER, CITY DEFENDANTS

YOHANCE L. CHRISTIE, #24271
CITY ATTORNEY

By: *_/s/ Sarah J. Rada_*
SARAH J. RADA, #25545
ASSISTANT CITY ATTORNEY
555 South 10th Street, Suite 300
Lincoln, NE 68508
Telephone: 402-441-7281
E-mail: srada@lincoln.ne.gov
COUNSEL FOR CITY DEFENDANTS

## CERTIFICATE OF COMPLIANCE

In accordance with NECivR 7.1(d)(1)(D) and 7.1(d)(2), I hereby certify that this brief contains 3,269 words, which includes all text, including the caption, headings, footnotes, and quotations as determined by the word count function of Microsoft Word for Microsoft Office 365. I further certify that no generative artificial intelligence program was used in the preparation of this brief.

By: *_/s/ Sarah J. Rada_*
SARAH J. RADA, #25545

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and a copy of such filing has been sent via regular U.S. mail and electronic mail to:

Richard B. Bayson
4300 N. 7th Street, #306
Lincoln, NE 68521
richard.bayson@yahoo.com

Morgan R. Sanchez
Lancaster County Attorney's Office
605 S. 10th Street
Lincoln, NE 68508
msanchez@lancaster.ne.gov

By: */s/ Sarah J. Rada*
SARAH J. RADA, #25545